UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOEL L. ROBINSON, | CASE NO. 2:25-cv-02402-JNW |
| Plaintiff, | ORDER |
| v. | |
| DEBRA STEPHENS et al., | |
| Defendants. | |

## 1.  INTRODUCTION

This matter comes before the Court on ten pending motions. For the reasons stated below, the Court GRANTS State Defendants' motion to dismiss, Dkt. No. 20, but DENIES all other motions, Dkt. Nos. 10, 23, 28, 30, 32, 33, 37, 38, and 51.

## 2.  BACKGROUND

This is a section 1983 civil rights case. Plaintiff Joel Robinson sues five Defendants, whom the Court separates into two groups—first, Washington Supreme Court Chief Justice Debra Stephens and State Court Administrator Dawn Marie Rubio ("State Defendants"); and second, King County, Superior Court

ORDER - 1

Presiding Judge Ketu Shah, and Department of Adult and Juvenile Detention Director Allen Nance ("King County Defendants").

Robinson describes himself as a "long-time licensed criminal paralegal who operates J.R.'s Legal Services." Dkt. No. 5 at 2. Robinson alleges that Defendants violated his constitutional rights by applying "practice-of-law, courtroom, and access-to-courts rules [against] him." *Id.* at 3. Specifically, Robinson alleges that King County Superior Court Judges Keenan, Donohue, and Thorp barred him from "confidential access" to criminal defendants that he assists through the King County Department of Public Defense's (DPD) expert services policy. *Id.* at 13–15.

According to Robinson, DPD's policy grants funds to indigent, pro se defendants, which they can use to procure Robinson's assistance. *Id.* at 9. Because Judges Keenan, Donohue, and Thorp classified Robinson as an "unlicensed practitioner," Robinson cannot conduct confidential visits with incarcerated clients or send privileged legal mail. Robinson alleges these restrictions preclude him from "work[ing] as a paralegal" and claims Defendants are selectively targeting him as "a Black man who primarily assists Black and low-income defendants" and a supporter of the Republican party and Donald Trump. *Id.* at 12.

Robinson argues that, in treating him as "unlicensed," Defendants violate his First and Fourteenth Amendment rights to free speech, equal protection, and due process. *Id.* at 15–18. Robinson seeks two injunctions: first, he seeks to enjoin Defendants Stephens, Rubio, and Shah from interpreting case law and local rules to "restric[t] his access to incarcerated clients on the ground that he is 'unlicensed'"; second, Robinson seeks to enjoin King County and Nance from "restricting his

ORDER - 2

access to incarcerated clients on the ground that he is 'unlicensed'" and requests private in-person visits to King County jail facilities, confidential "legal or expert mail," and privileged, unmonitored telephone communications. *Id.* at 19–20.

Robinson filed his original complaint on November 26, 2025. Dkt. No. 1. On December 5, 2025, Robinson filed an amended complaint (First Amended Complaint or FAC). Dkt. No. 5. The First Amended Complaint is the operative pleading. Fed. R. Civ. P. 15(a)(1).

On January 13, 2026, Robinson filed a motion seeking leave to file a "[fourth] amended complaint." Dkt. No. 23 at 2. The Court believes this to be a scrivener's error and construes Robinson's motion as seeking leave to file a Second Amended Complaint (SAC).

## 3. DISCUSSION

### 3.1 State Defendants' motion to dismiss, Dkt. No. 20.

#### 3.1.1 Legal standards.

State Defendants argue that the FAC should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 20.

The Court will grant a Rule 12(b)(6) motion if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court accepts

factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). Dismissal is improper "if there is 'any set of facts consistent with the allegations in the complaint' that would entitle the plaintiff to relief." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 982 (W.D. Wash. 2022) (quoting *Twombly*, 550 U.S. at 563).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and are presumed to lack jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III standing is an essential ingredient of subject matter jurisdiction." *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021) (quoting *Whitaker v. Tesla Motors Inc.*, 985 F.3d 1173, 1178 (9th Cir. 2021)). When evaluating a facial challenge to jurisdiction, the court accepts the factual allegations in the complaint as true. *Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

Under the Federal Rules of Civil Procedure, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Thus, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Courts are not to "dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Rosati v. Igbinoso*,

791 F.3d 1037, 1039 (9th Cir. 2015) (citing *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988))).

### 3.1.2    The Eleventh Amendment bars Robinson's claims against State Defendants.

State Defendants move to dismiss Robinson's claims for two reasons; first, they argue Robinson fails to state claims against them because he does not allege that either Chief Justice Stephens or Rubio personally participated in constitutional violations; and second, they argue Robinson's claims are barred by the Eleventh Amendment. The Court agrees on both counts.

The allegedly unconstitutional conduct Robinson describes—judges preventing him from confidential or privileged access to criminal defendants—is specific to three King County Superior Court judges. He does not mention Chief Justice Stephens or Rubio in any of the background facts. Indeed, Robinson mentions them only once in the FAC in his prayer for injunctive relief. Robinson asks that Chief Justice Stephens and Rubio "[c]ease interpreting or enforcing practice-of-law, courtroom, or access-to-court rules in a manner that singles out [Robinson] . . . based on his race, former incarceration, [ or] political beliefs . . ." and "[r]efrain from treating him as unlicensed or unqualified to provide paralegal or expert services[.]" But there are no facts to support that Chief Justice Stephens or Rubio has done any of these things.

Under Section 1983, plaintiffs must plead that the defendant's conduct caused the alleged constitutional violation. *Crumpton v. Gates*, 947 F.2d 1418, 1420

ORDER - 5

(9th Cir. 1991). Here, Robinson fails to allege involvement by either Chief Justice Stephens or Rubio.

Moreover, the Eleventh Amendment bars Robinson's claims. Robinson sues Chief Justice Stephens and Rubio in their official capacities. Dkt. No. 5 at 1. Official-capacity claims against state officials are, at their core, claims against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("We emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) ("[The court] treat[s] [the plaintiff's] suit against state officials in their official capacities as a suit against the state of California").

Chief Justice Stephens and Rubio are state officials. Justice Stephens is the Chief of the Washington Supreme Court, a judicial body created by the Washington State Constitution. Wash. Const. art. IV, § 2; RCW § 2.04.010. Rubio runs the administrative office of the courts. *See* RCW § 2.56.010 ("There shall be a state office to be known as the administrative office of the courts. The executive officer of the administrative office of the courts is the administrator for the courts, who shall be appointed by and hold office at the pleasure of the supreme court of [Washington].")

Generally, the Eleventh Amendment to the United States Constitution bars lawsuits by a citizen against a state. *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); *see Flint v. Dennison*, 488 F.3d 816, 825 (9th

ORDER - 6

Cir. 2007) ("[S]tate officials sued in their official capacities, . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity.").

One exception to this general rule exists: "when sued for *prospective injunctive* relief, a state official in [their] official capacity is considered a 'person' for § 1983 purposes." *Malone v. Washington*, No. 19-5574 RJB-JRC, 2020 WL 5817066, at *3 (W.D. Wash. Sept. 30, 2020) (emphasis in original) (quoting *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)). This is part of the *Ex parte Young* doctrine. *Doe*, 131 F.3d at 839 ("In what has become known as part of the *Ex parte Young doctrine, see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.").

However, the exception will not apply unless the state officer has "some connection with the enforcement of the [allegedly unconstitutional] act." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (alterations in original) (quoting *Ex parte Young*, 209 U.S. at 157). Here, neither Chief Justice Stephens nor Rubio oversees how Superior Court judges conduct their proceedings. Because Chief Justice Stephens and Rubio do not dictate whether Robinson is granted confidential visits with defendants or access to privileged legal mail, the injunctive relief Robinson seeks would not bind either Defendant as the conduct at issue is not within their official duties. The exception under *Ex parte Young*, therefore, is not applicable and the Eleventh Amendment bars Robinson's claims.

ORDER - 7

Courts are not to "dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati*, 791 F.3d at 1039 (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). Here, the deficiencies cannot be cured  by amendment because State Defendants are immune. The Court is satisfied that it is "absolutely clear" that amendment would be futile. *Id*.

Accordingly, the Court GRANTS State Defendants' motion to dismiss, Dkt. No. 20, and DISMISSES Robinson's FAC against Chief Justice Stephens and Rubio WITH PREJUDICE.

### 3.2    Robinson's motion for leave to file a SAC, Dkt. No. 23.

Robinson's motion for leave to file a second amended complaint is voluminous and difficult to follow. *See* Dkt. No. 23. With exhibits spanning 105 pages it is unclear which documents comprise the proposed SAC. Notably, Robinson says he includes as Exhibit B "the Proposed 4th Amended Complaint in clean form (complete in itself)." Dkt. No. 23 at 4. But Exhibit B contains only "supplemental allegations" and "additions" "to be appended to the existing complaint, without deleting any original allegations." Dkt. No. 23-1 at 6.

Under Local Civil Rule 15(a), "[t]he proposed amended pleading must not incorporate by reference any part of the preceding pleading, including exhibits." It appears Robinson seeks to add to the FAC without submitting a complete proposed SAC for review—a practice that runs afoul of Local Civil Rule 15(a)'s prohibition on

ORDER - 8

incorporation by reference. Accordingly, the Court DENIES Robinson's motion to amend.

### 3.3     Robinson's motions to strike Defendants' opposition briefs, Dkt. Nos. 28, 32, and 37.

Related to his motion to amend, Robinson filed two additional motions asking the Court to strike Defendants' opposition briefs, arguing that Defendants failed to provide him timely service of their responses. Dkt. No. 28, 32. Robinson also filed a consolidated motion to strike and deny all motions noted for February 2, 2026, as untimely, and to require Defendants to obtain leave of court before filing further dispositive motions. Dkt. No. 37.

Because the Court denies Robinson's motion to amend for lack of compliance with Local Civil Rule 15(a), his motions to strike Defendants' responses are moot. As to the consolidated motion, Dkt. No. 37, the Court declines to impose the extraordinary restrictions Robinson requests. Defendants' filings were responsive to Robinson's own motions, and the Court finds no basis to strike them or to require leave of court for future filings at this stage of the proceedings. Thus, the Court DENIES Robinson's motions at Dkt. Nos. 28, 32, and 37.

### 3.4     Robinson's motion for injunctive relief, Dkt. No. 30.

Robinson asks the Court to enjoin all Defendants from "ongoing interference with mail and access channels affecting current and prospective pro se litigants." Dkt. No. 30 at 2. Robinson's claim is two-pronged. First, he alleges that Defendants have rejected "legal mail addressed to Keenan Byrd," an incarcerated individual. *Id.* at 3. Robinson asks the Court to order Defendants to treat "legal mail" from

ORDER - 9

Robinson to Byrd as confidential, i.e., the same way they would treat mail from an inmate's attorney, because to do otherwise violates Byrd's right to meaningful access to the courts. *See id.* at 2.

Second, Robinson alleges that Defendants have rejected regular mail he sent to 16 "other jail detainees." *Id.* at 3. Robinson asserts this censorship violates his First Amendment right to communicate with "current and prospective pro se litigants[.]" *Id.* He asks the Court to enjoin Defendants from rejecting his regular mail.

### 3.4.1    Legal standard.

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

The Ninth Circuit takes a "sliding-scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of [preliminary injunctive relief], so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. &*

ORDER - 10

*Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

In all circumstances, the moving party must make "a showing on all four prongs" under *Winter* to obtain preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### 3.4.2    Robinson's motion does not meet the *Winter* factors.

With respect to State Defendants, the Court has determined that the Eleventh Amendment bars Robinson's claims and, has dismissed them from this suit. For the same reasons, the Court denies Robinson's motion for an injunction against State Defendants.

For the remaining King County Defendants, the Court finds Robinson is not entitled to the extraordinary relief sought.

Robinson seeks to enjoin two alleged ongoing constitutional violations: first, the King County Defendants' refusal to allow Robinson to send confidential "legal mail" to Byrd; and second, the King County Defendants' alleged rejection of Robinson's regular mail to incarcerated individuals in violation of his First Amendment right to communicate with people in prison. The Court considers each in turn.

Because "a litigant must normally assert [their] own legal interests rather than those of third parties[,]" it is unlikely that Robinson has standing to raise a

ORDER - 11

constitutional violation on behalf of Byrd. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985). Exceptions to this general rule exist where a party meets the requirements of third-party standing. For third-party standing, "'litigant[s] must have suffered an 'injury in fact,' thus giving [them] a 'sufficiently concrete' interest in the outcome of the issue in dispute; [litigants] must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect [their] own interest.'" *Home Care Ass'n of Am. v. Bonta*, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Close relationships that courts have recognized in the third-party standing context include a physician and their patient, a seller and its customers, and a lawyer and their clients. *See Singleton v. Wulff*, 428 U.S. 106 (1976); *Craig v. Boren*, 429 U.S. 190 (1976); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988); *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715 (1990). Indeed, courts have even recognized a close relationship between attorneys and potential clients. *Ohio Just. & Pol'y Ctr. v. Chambers-Smith*, No. 1:25-CV-291, 2026 WL 369374, at *7 (S.D. Ohio Feb. 10, 2026).

However, Robinson's relationship to Byrd and other incarcerated individuals does not parallel any of these recognized relationships. While Robinson says he is a paralegal, he admits he is not a licensed attorney and does not allege he is working under the supervision or on behalf of a licensed attorney. Moreover, Robinson makes no clear argument about why Byrd or other incarcerated individuals are hindered from bringing their own claims against King County regarding legal mail.

ORDER - 12

The Court finds it unlikely that Robinson will meet the requirements of third-party standing to raise constitutional claims on behalf of others.

As to Robinson's claim that the King County Defendants are violating his own constitutional rights, it fares no better. Outsiders have a legitimate First Amendment interest in communication by mail with incarcerated individuals. *Prison Legal News v. Cook,* 238 F.3d 1145, 1149 (9th Cir.2001) (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 408, (1989)). This right is not unrestricted and "prison policies that infringe upon this First Amendment right of communication will be upheld if 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Lehman*, 272 F. Supp. 2d 1151, 1155 (W.D. Wash. 2003), *aff'd,* 397 F.3d 692 (9th Cir. 2005) (quoting *Turner v. Safley*, 482 U.S. 78, 79 (1987)). To determine whether a policy is reasonable, courts in this district apply the four-factor *Turner* test: "(1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Ejonga v. Sinclair*, No. C20-0320-RSM-BAT, 2021 WL 963473, at *3 (W.D. Wash. Mar. 15, 2021), *aff'd in part, rev'd in part and remanded sub nom. Ejonga-Deogracias v. Sinclair*, No. 21-35211, 2023 WL 2584245 (9th Cir. Mar. 21, 2023) (affirming the district court's use of the *Turner* test but disagreeing with the outcome).

In his motion for injunctive relief, Robinson does not describe the contents of the regular mail that King County Defendants allegedly rejected or identify what specific aspect of the mail policy is allegedly unconstitutional. The Court cannot find that Robinson is clearly entitled to an injunction under the *Turner* test given this lack of detail. It is clear that Robinson is not entitled to confidential legal mail given he is not an attorney. It is not clear what other regular mail policy he is challenging here. Thus, the Court cannot say Robinson meets the first *Winter* factor as he is unlikely to succeed on the merits and the Court does not have serious questions going to the merits of his First Amendment claim against the King County Defendants.

The Court also denies Robinson's motion because he fails to demonstrate irreparable harm. Robinson argues the violation of his and Byrd's constitutional rights inflicts irreparable harm. But, as stated above, Robinson does not have standing to assert claims on Byrd's behalf and as to his own rights, it is not clear whether King County's regular mail policies are overly restrictive based on the facts Robinson alleges.

Robinson also seeks $5 million in "compensatory damages." Monetary damages are not generally irreparable. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages."). Thus, Robinson's alleged harms are not irreparable, making preliminary injunctive relief inappropriate.

Finally, King County Defendants move to strike Robinson's motion for injunctive relief, arguing it is improperly noted under Local Civil Rule 7(d). Dkt. No.

ORDER - 14

33. Because the Court denies Robinson's motion for injunctive relief on the merits, the King County Defendants' motion to strike is moot. Thus, the Court DENIES the King County Defendants' motion to strike, Dkt. No. 33.

### 3.5    Motions seeking additional relief.

#### 3.5.1    Motion to bifurcate, Dkt. No. 10.

Robinson asks the Court to bifurcate proceedings under Federal Rule of Civil Procedure 42(b). "A court might bifurcate a trial to 'avoid[ ] a difficult question by first dealing with an easier, dispositive issue,' or to avoid the risk of prejudice. *Qualey v. Pierce Cnty.*, No. 3:23-CV-05679-TMC, 2025 WL 948511, at \*13 (W.D. Wash. Mar. 28, 2025) (quoting *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016)).

Robinson argues that a single trial will cause prejudice because the jury will have to "absorb complex constitutional evidence while simultaneously hearing detailed testimony about [Robinson's] emotional state, finances, and business dealings," which could cause jury confusion. The Court is not persuaded. There is nothing about this case that makes it unique from a standard trial in which juries are asked to determine liability and damages. This is often the case, and there's nothing to suggest the Court should exercise its discretion to order a bifurcated trial. Robinson's motion, Dkt. No. 10, is DENIED.

#### 3.5.2    Motion for a protective order, Dkt. No. 38.

Robinson moves for a protective order that would "[p]reserv[e] the current judicial assignment unless and until any reassignment occurs through neutral,

ORDER - 15

random, and Court-supervised procedure[.]" Dkt. No. 38 at 4. Robinson states that he seeks "prophylactic relief" because he "has been independently informed, through unsolicited third-party notifications, that Defendants may intend to pursue procedural steps calculated to effect a change of judge[.]" *Id.* at 1–2.

Defendants have not moved for judicial reassignment and the Court declines to make a preemptive ruling on an issue that has not been raised on the record. The motion is DENIED, Dkt. No. 38.

### 3.5.3    Motion to strike portions of declarations by Williams and Jibbensmith, Dkt. No. 51.

In support of their response opposing Robinson's motion for injunctive relief, King County Defendants submitted two declarations: the Declaration of Andrea Williams, Program Manager for the King County Department of Adult and Juvenile Detention, Dkt. No. 47, and the Declaration of Greta Jibbensmith, Senior Deputy Prosecuting Attorney, Dkt. No. 48. Robinson moves to strike portions of the declarations that "contain conclusory assertions, speculative institutional forecasting, legal conclusions, or insinuations unsupported by admissible evidence[.]" Dkt. No. 51 at 2. But Robinson does not identify with specific which statements he objects to. The Court declines to guess which portions Robinson challenges and, thus, DENIES Robinson's motion, Dkt. No. 51.

## 4.  CONCLUSION

In sum, the Court GRANTS State Defendants' motion to dismiss, Dkt. No. 20, and DISMISSES Robinson's FAC against Chief Justice Stephens and Rubio WITH

ORDER - 16

PREJUDICE. The Court DENIES Robinson's motions at Dkt. Nos. 10, 23, 28, 30, 32, 37, 38, and 51. The Court DENIES King County Defendants' motion to strike, Dkt. No. 33.

Dated this 2nd day of April, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 17